**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

WE THE PATRIOTS USA, INC. :
  and       :
JAMES CHILDS,     :
          :  DKT No.: _____
    Plaintiffs  :
          :
v.          :
          :
PENDER MAKIN, in her official :
capacity only;     :
   and     :
CARI MEDD, in her    :
official capacity only,   :
          :
    Defendants :  July 14, 2026

## COMPLAINT

1. This is an action for declaratory and injunctive relief that raises a First Amendment challenge to Maine's school vaccination laws. The Plaintiff, James Childs, religiously refuses to vaccinate his 12-year-old son who is a 7th grader at Turner Middle School in Maine. His son now faces expulsion for Childs' refusal to vaccinate him.

## PARTIES

2. Plaintiff We The Patriots USA, Inc. ("WTP"), is a nonprofit public charity organized and operated exclusively for tax-exempt purposes in accordance with Section 501(c)(3) of the Internal Revenue Code. More specifically, it is dedicated to promoting constitutional rights and other freedoms through public interest litigation, education, and outreach, thereby advancing religious freedom, medical

1

freedom, parental rights, and educational freedom for all. As a Section 501(c)(3) public charity, WTP has thousands of members across the United States who support its mission to bring litigation in federal and state courts on a variety of constitutional and other freedom-related matters directly affecting their rights and interests. Plaintiff James Childs is a member of WTP. In addition to Childs, other of WTP's Maine members are affected by the laws complained of herein.

3.     James Childs is a Maine citizen and resident. He is also a member of We The Patriots USA, Inc. He brings this action on behalf of himself and his son who is an incoming 8th grader in Maine.

4.     Pender Makin is the Commissioner of the Maine Department of Education. She is sued in her official capacity only. She is responsible for, and is currently, enforcing Maine's school vaccination laws, including in Maine School Administrative District #52 against Childs' son.

5.     Cari Medd is the Superintendent of Maine School Administrative District #52. She is sued in her official capacity only. She is responsible for enforcing, and is currently, enforcing Maine's school vaccination laws against Childs' son.

## JURISDICTION

6.     The Court has jurisdiction over this action under 28 U.S.C., § 1331, 1343, and 2201 as well as 42 U.S.C. § 1983. As set forth in detail below, the Plaintiff brings this action under 42 U.S.C. § 1983 against the Defendants for violating his First Amendment rights.

7.    Venue is appropriate under 28 U.S.C. § 1391 because all of the factual events giving rise to the cause of action are occurring in Maine.

## FACTUAL ALLEGATIONS

### *Maine's Vaccination Laws*

8.    Maine has long required superintendents of schools to refuse to enroll a child in school without a certificate of immunization for certain diseases or other evidence of immunization or immunity. *See* 20 A.M.R.S.A. § 6355.

9.    Prior to September 1, 2021, Maine recognized and respected religious and philosophical exemptions to school vaccinations. *See Fox v. Makin*, 2023 WL 5279517, at *2 (D.Me. 2023) (discussing statutory history).

10.    In 2019, Maine repealed its religious and philosophical exemptions, effective September 1, 2021. *Id*.

11.     As matters currently stand, Maine recognizes three exemptions to its school vaccination requirement:

  a. A 90-day grace period for a child to be immunized upon the written assurance of a parent. 20 A.M.R.S.A. § 6355(1).

  b. A medical exemption based on a written statement from a statutorily specified medical provider that a vaccination is medically inadvisable. 20 A.M.R.S.A. § 6355(2).

  c. Religious or philosophical exemptions for students covered by individualized education plans (IEP) who invoked a religious or

3

philosophical objection prior to September 1, 2021 as long as they undergo medical counseling. 20 A.M.R.S.A. § 6355(4).

12.    Maine requires vaccination for the following diseases under 05-071 Me. Code R. ch. 126 § 2 (2021):

    a.  Diptheria

    b.  Measles

    c.  Meningococcal meningitis

    d.  Mumps

    e.  Pertussis

    f.  Poliomyelitis

    g.  Tetanus

    h.  Rubella

    i.  Varicella.

### Herd Immunity And Maine's Vaccination Requirements

13.    Maine's vaccination policy and statutory revisions are an attempt to secure the benefit of herd immunity on a state-wide population level in Maine schools.

14.    Herd immunity (also known as community immunity) is a public health concept that refers to when enough members of a community become immune to a disease that the spread of disease becomes highly unlikely.

15.    Once herd immunity is reached, it, in theory, protects the whole community, not just those who have obtained immunity through vaccination or the natural development of their immune systems.

16. Herd immunity thresholds delineate the percentage of the population that must obtain immunity to effectively eliminate its spread.

17. Upon information and belief, the herd immunity thresholds for the diseases on Maine's required vaccination list are as follows:

    a. **Diphtheria** – 85%;

    b. **Measles** – 92-94%

    c. **Meningococcal meningitis** – 17-26%

    d. **Mumps** – 75-86%

    e. **Pertussis** – 92-94%

    f. **Poliomyelitis** – 75-92%

    g. **Tetanus** – herd immunity is not possible because it does not spread directly between people but is rather contracted via soil bacteria.

    h. **Rubella** – 83-85%

    i. **Varicella (chickenpox)** – 83%

### *Maine's Vaccination Data*

18. Maine's vaccination tracking has varied at the grade level over the years. The only consistent metric that it tracks are the vaccination types.

19. From 2015-2016 to 2020-2021, Maine has reported the following vaccination data for kindergarten based on samples that it drew:

| Year | Vaccine | Total Vaccination Rate | Total Exemption Rates (Medical, Religious, And Philosophical) |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 2015-16 | DTaP[1] | 96.1% | 2.7% |
| | MMR[2] | 95.1% | 3.6% |
| | Polio | 96.0% | 1.3% |
| | Varicella | 96.1% | 2.6% |
| 2016-17 | DTaP | 96.3% | 3.3% |
| | MMR | 94.9.% | 4.1% |
| | Polio | 96.1% | 3.4% |
| | Varicella | 96.7% | 2.9% |
| 2017-18 | DTaP | 95.3% | 3.9% |
| | MMR | 94.3% | 4.5% |
| | Polio | 95.3% | 4.0% |
| | Varicella | 96.3% | 3.4% |
| 2018-19 | DTaP | 94.5% | 4.8% |
| | MMR | 93.8% | 5.2% |
| | Polio | 94.5% | 4.8% |
| | Varicella | 95.9% | 3.8% |
| 2019-20 | DTaP | 94.1% | 4.9% |
| | MMR | 94.1% | 5.0% |
| | Polio | 94.2% | 5.0% |
| | Varicella | 96.2% | 3.6% |
| 2020-21 | DTaP | 93.9% | 3.7% |
| | MMR | 94.3% | 3.6% |
| | Polio | 94.2% | 3.7% |
| | Varicella | 97.0% | 2.4% |

20.    In 2021-2022, Maine modified its reporting requirements for kindergarten to reflect the combination of medical and IEP exemptions and 90-day exemption rates. From 2021-2022 to 2024-2025, Maine has reported the following vaccination data for kindergarten based on samples that it drew:

| Year | Vaccine | Total Vaccination Rate | Medical & IEP Exemptions | 90 Day Exemptions |
|---|---|---|---|---|
| 2021-22 | DTaP | 96.3% | 1.3% | 0.9% |

---

[1] DTaP is the vaccination for diptheria, tetanus, and pertussis. It is typically administered as a single vaccination.
[2] MMR is the vaccination for measles, mumps, and rubella. It is typically administered as a single vaccination.

| | | | | |
|---|---|---|---|---|
| | MMR | 96.5% | 1.3% | 0.8% |
| | Polio | 96.7% | 1.2% | 0.7% |
| | Varicella | 95.5% | 1.4% | 1.3% |
| 2022-23 | DTaP | 96.6% | 0.7% | 0.9% |
| | MMR | 96.8% | 0.6% | 0.9% |
| | Polio | 96.8% | 0.7% | 0.8% |
| | Varicella | 96.6% | 0.7% | 0.9% |
| 2023-24 | DTaP | 96.9% | 0.7% | 0.9% |
| | MMR | 97.4% | 0.6% | 0.8% |
| | Polio | 97.4% | 0.6% | 0.7% |
| | Varicella | 97.1% | 0.7% | 0.8% |
| 2024-25 | DTaP | 97.3% | 0.6% | 0.9% |
| | MMR | 97.7% | 0.6% | 0.8% |
| | Polio | 97.6% | 0.6% | 0.8% |
| | Varicella | 97.4% | 0.7% | 0.8% |

21. This data establishes that Maine still accommodates a myriad of exemptions to its school vaccination policies.

### *Risks Of Unvaccinated Individuals In Maine's Schools*

22. Maine's vaccination requirement is plainly targeted toward reducing the spread of contagious disease through vaccination.

23. Maine's vaccination requirement essentially claims that unvaccinated students pose a health risk to their peers by being more likely to spread disease and more likely to contract it.

24. An unvaccinated person in Maine's schools poses the same risks regardless of the reason why they are unvaccinated.

25. In other words, a student unvaccinated for medical reasons poses the identical risk as a student unvaccinated for religious reasons.

26. A student who is on an IEP and is unvaccinated based on a religious or philosophical objection poses the identical risk as a student who is not on an IEP and

7

is unvaccinated for religious reasons.

27.    A student who is unvaccinated during the 90-day grace period poses the identical risk as a student unvaccinated for religious reasons.

28.    Maine law does not require school employees – such as teachers, teachers' aides, principals, staff, janitors, and/or bus drivers – to  have any of the nine required school vaccinations; and therefore the law is significantly "underinclusive".

29.    Unvaccinated employees pose the same health risks to students as unvaccinated students do.

### *Products Derived From Aborted Fetuses With Potential For Devastating Health Consequences*

30.    A vaccine consists of a virus (or a component of a virus), a liquid buffer, contaminants from the cell line used to manufacture it, commercial stabilizer, and other additives.

31.    It is physically impossible to remove all cell line contaminants from a vaccine dosage.

32.    Pharmaceutical companies also use cell lines artificially developed from aborted fetuses to research, develop, test, and product their vaccines.

33.    Every vaccine required by Maine has been researched, developed, tested, or otherwise produced using aborted fetal cell lines.

34.    The presence of very small amounts of human fetal cells and DNA in the human blood can create a very strong autoimmune reaction in a person by which his body turns against itself and starts killing its own cells and tissues.

### *Plaintiff James Childs*

35.     James Childs is a Christian who believes in the sanctity of life and that the human body is the temple of the Holy Spirit.

36.     Childs believes that abortion is morally wrong and that he and his family have a religious duty to refrain from participating in it or benefiting from it, no matter how remote the connection is.

37.     Childs also believes that Christians have a duty to honor God with their bodies and protect their bodies.

38.     Childs also believes, as a religious matter, that educating his son is a religious obligation.

39.     Childs is the father of a 12-year-old son, G.C., who is an incoming eighth-grader at Maine School Administrative Unit #52.

40.     Childs will not vaccinate his son because of his religious beliefs.

41.     For more than a year, the Defendants and their agents have attempted to persuade Childs to vaccinate his son through threats of expulsion and ultimatums.

42.     Childs has tried repeatedly to work with them to keep his son in school while finding a compromise for his religious beliefs.

43.     The Defendants have now reached the end of the line and have informed Childs that his son must become vaccinated for Tdap and Meningococcal or he will be denied enrollment to public school for the 2026-2027 school year.

44.     Childs' son will be denied enrollment in Maine public schools unless his father abandons his religious beliefs.

## COUNT ONE – 42 U.S.C. § 1983 Claim For Violation Of The First Amendment's Free Exercise Clause – Right To Direct Children's Religious Upbringing

45.     Paragraphs 1 through 44 are incorporated herein.

46.     The First Amendment protects a parent's right to direct the religious upbringing of their children. *Mahmoud v. Taylor*, 606 U.S. 522, 546 (2025).

47.     This includes the right of parents to direct their children to engage in affirmative acts in accordance with their faith as well as abstention from acts that violate their faith. *Id.* at 546; *see also Kennedy v. Bremerton School District*, 597 U.S. 507, 524 (2022).

48.     The right of parents to direct their children's religious upbringing applies even when the state asserts a public health interest in a child's physical and mental well-being. *See Mirabelli v. Bonta*, 146 S.Ct. 797 (Mar. 2, 2026).

49.     The Defendants are violating James Childs' right to direct his son's religious upbringing by conditioning his son's education on the receipt of vaccinations that violate his religious beliefs.

50.     The Defendants are also violating similarly-situated members of WTP by conditioning their children's education on the receipt of vaccinations that violate their religious beliefs.

51.     This conditioning burdens Childs' and WTP's members' right to direct the religious upbringing of their children by compelling an irreversible physical act that violates their religious beliefs and will strip them of the moral authority necessary to raise their children in accordance with those beliefs.

52. For these reasons, the Defendants' actions and 20 A.M.R.S.A. § 6355 violate Childs' and WTP's members' First Amendment right to direct the religious upbringing of their children.

### COUNT TWO – 42 U.S.C. § 1983 Claim For Violation Of The First Amendment's Free Exercise Clause – General Applicability

53. Paragraphs 1 through 44 are incorporated herein.

54. 20 A.M.R.S.A. § 6355 is not generally applicable because it provides for medical exemptions that undermine Maine's interest in the same way that religious exemptions do.

55. 20 A.M.R.S.A. § 6355 is not generally applicable because it provides for temporary secular accommodations of 90 days that undermine Maine's interest in the same way that religious exemptions do.

56. 20 A.M.R.S.A. § 6355 is not generally applicable because it provides for permanent philosophical exemptions to students on IEPs that undermine Maine's interest in the same way that religious exemptions do.

57. 20 A.M.R.S.A. § 6355 is not generally applicable because it provides for identical religious exemptions to students on IEPs that undermine Maine's interest in the same way that normal religious exemptions do.

58. 20 A.M.R.S.A. § 6355 is not generally applicable because it fails to impose any vaccination requirement on school employees who, unvaccinated, undermine Maine's interest in the same way that religiously exempted students do.

59.     For these reasons, the Defendants' actions and 20 A.M.R.S.A. § 6355 violate Childs' and WTP's members' First Amendment right to freely exercise their religion.

### COUNT THREE – 42 U.S.C. § 1983 Claim For Violation Of The First Amendment's Free Exercise Clause – Neutrality

60.     Paragraphs 1 through 44 are incorporated herein.

61.     20 A.M.R.S.A. § 6355 is not neutral because it prefers some religious conduct over identical religious conduct depending on when it is asserted.

62.     Earlier in-time religious exemptions undermine Maine's interest in the same way that subsequent religious exemptions do.

63.     Such arbitrary distinctions violate the First Amendment's guarantee of neutrality by bestowing public benefits on some religious adherents but not others.

64.     For these reasons, the Defendants' actions and 20 A.M.R.S.A. § 6355 violate Childs' and WTP's members' First Amendment right to freely exercise their religion.

### COUNT FOUR – 42 U.S.C. § 1983 Claim For Violation Of The First Amendment's Establishment Clause

65.     Paragraphs 1 through 44 are incorporated herein.

66.     The First Amendment's Establishment Clause provides in relevant part: "Congress shall make no law respecting an establishment of religion…." This provision is incorporated against the states by the Fourteenth Amendment.

12

67.     The Supreme Court's Establishment Clause precedents establish that states cannot pass laws that "aid one religion, aid all religions, or prefer one religion over another." *Epperson v. Arkansas*, 393 U.S. 97, 106 (1968) (cleaned up).

68.     20 A.M.R.S.A. § 6355 violates the Establishment Clause by bestowing public benefits on some religious adherents, but not others, depending on when they make their beliefs known to Maine.

69.     For these reasons, the Defendants' actions and 20 A.M.R.S.A. § 6355 violate the First Amendment's Establishment Clause.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff seek the following relief:

A. A declaratory judgment that 20 A.M.R.S.A. § 6355 and the Defendants' actions violate the First Amendment's Free Exercise Clause and are unconstitutional;

B. A declaratory judgment that 20 A.M.R.S.A. § 6355 and the Defendants' actions violate the First Amendment's Establishment Clause and are unconstitutional;

C. A permanent injunction enjoining the Defendants, their agents, officers, and any other person subject to their control or direction from enforcing 20 A.M.R.S.A. § 6355 against James Childs, his son, and similarly situated members of We The Patriots USA, Inc. who religiously object to receiving Maine's required school vaccinations;

D. Attorneys' fees;

13

E.  Costs;

F.  Any such further relief that the Court deems just and equitable or is

allowed by law.

<div style="margin-left:40%">

The Plaintiffs,

By: /s/ Stephen C. Whiting /s/
Stephen C. Whiting, ME Bar No.559
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME. 04101
(207) 780-0681
steve@whitinglawfirm.com


By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
         *pro hac vice pending*
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

</div>

14